UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRADEWINDS ENVIRONMENTAL RESTORATION, INC, | CIVIL ACTION |
| VERSUS | NO. 06-1093 |
| BIOMEDICAL APPLICATIONS OF LOUISIANA, INC., d/b/a FRESENIUS MEDICAL CARE, N.A. | SECTION "L" (2) |

ORDER AND REASONS

Before the Court is Defendant Bio-Medical Applications of Louisiana, Inc., d/b/a Fresenius Medical Care, N.A.'s ("BMA") Motion for Partial Summary Judgment (Rec. Doc. 24). For the following reasons, the motion is GRANTED IN PART.

I. Background

On or about September 25, 2005, BMA, the operator of several kidney dialysis clinics, conducted negotiations with Tradewinds Environmental Restoration, Inc. ("Tradewinds") to perform remediation services at four of its facilities damaged by Hurricane Katrina. Three of the flood-damaged clinics were located in Louisiana, and one was located in Mississippi. Only the Louisiana clinics are subject of this suit.

The parties' negotiations, subsequently memorialized in Work Authorization Contracts,[1]

---

[1] The Work Authorization Contracts were executed on September 30, 2005. (*See* Ex. 6 to Pl. Reply; *see also* Aff. of David S. Rubiton, Tradewinds In-house Counsel ¶ 20 ("On or about September 30, 2005, [BMA] signed the first of four contracts and price lists for mold remediation services at its impacted facilities in Louisiana."). However, according to Tradewinds' complaint, the written contract regarding the Franklin Property (defined herein) was entered into on October 3, 2005, the written contract regarding the Bundy Property (defined herein) was entered into on October 9, 2005, and the written contract regarding the Solidell

1

included oral estimates as to the cost of services. Tradewinds estimated remediation costs for the facility located on 5725 Bundy Road, New, Orleans, Louisiana ("Bundy Property") at $75,000. The second facility, located at 1701 Franklin Avenue, New Orleans, Louisiana ("Franklin Property"), was estimated to cost approximately $60,000, and the third facility, located at 120 E. Solidell, Chalmette, Louisiana ("Solidell Property"), was estimated to cost approximately $20,000.

Tradewinds performed the remediation and cleanup services at these three facilities during the months of October and November 2005. After completing the work, Tradewinds mailed BMA final invoices which greatly exceeded oral estimates. Specifically, the invoices priced the services performed at the Bundy, Franklin and Solidell Properties at $300,394.49, $57,799.05, and $75,940.60, respectively. Though Tradewinds contends that the discrepancies between estimates and the invoice prices were due to the fact that the level of work was far greater then originally anticipated before the remediation process began, BMA argues that the costs are excessive and indicate profiteering.[2] Though BMA alleges that it requested supporting documentation from Tradewinds upon receipt of the invoices, it claims that Tradewinds refused to produce the requested documentation and instead filed mechanic liens against the facilities for non-payment of invoices.

In addition to the filing of liens against the properties, Tradewinds filed suit in this Court

---

Property (defined herein) was entered into on October 19, 2005. (Pl. Second Am. Compl. ¶¶ 6, 8, & 10).

[2]In its reply brief, BMA indicates that an issue may exist as to whether the services were performed in a workmanlike manner, which Tradewinds strongly denies. The Court does not address this point for purposes of this motion.

on March 3, 2006, alleging breach of contract; foreclosure of its mechanic liens pursuant to La. Rev. Stat. §§ 9:4801, et seq; failure to pay on an open account pursuant to La. Rev. Stat. § 9:2781; and unjust enrichment.[3]  Tradewinds claims that the only payments it has received to date from BMA are the three separate $20,000 mobilization fees paid to begin work on each property.

Though BMA contends that it will pay for work performed and materials supplied in accordance with the contracts, it believes that the sums listed on the invoices represent blatant profiteering.

## II. Motion for Partial Summary Judgment

BMA filed the instant Motion for Partial Summary Judgment regarding three of Tradewinds' four claims.  It first contends that Tradewinds may not recover on its breach of contract claim as the contracts violate public policy and are void under Louisiana law. Specifically, BMA contends that Tradewinds violated prohibitory laws by performing work without a contractor's license contrary to La. Rev. Stat. §§ 37:2150, et seq., and without a mold remediation license contrary to La Rev. Stat. §§ 37:2181, et seq.  Furthermore, BMA argues that the mechanic liens placed on the three facilities are invalid as Tradewinds did not comply with the requirements stated in La. Rev. Stat. § 9:481 when it obtained the liens.  Lastly, BMA argues that Tradewinds' claim for failure to pay on an open account must fail because the contracts at issue were contracts of construction and not contracts of sale, a precondition to suit on such claim under Louisiana law.

---

[3]Jurisdiction in this Court in based on diversity as Tradewinds is a New York corporation, BMA is a Louisiana corporation, and the amount in controversy exceeds $75,000.

**III. Law and Analysis**

    **A.**    **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable,...or is not significantly probative,...summary judgment may be granted." *Id*. at 249-50 (internal citations omitted). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates that no genuine issue of material fact exists, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc*. 61 F.3d 313, 315 (5th Cir. 1995). If the non-moving party fails to establish an essential element of his or her case, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

    **B.**    **Breach of Contract**

BMA first claims that the remediation contracts are null and void under Louisiana law because Tradewinds was not licensed by the State to perform work for which it was contracted. Thus, BMA argues that Tradewinds may not maintain a breach of contract claim.

La. Rev. Stat. §§ 37:2150, et seq., seeks to protect those persons dealing with contractors

by providing licensure requirements for contractors performing work within the State. According to § 37:2160, it is "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor...unless he holds an *active* license as a contractor under the provisions of this Chapter."  (emphasis added).  Thus, "only a person who *has obtained* a contractor's license from the State Licensing Board for Contractors may be engaged in the contracting vocation in the State of Louisiana."  *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 584 (La. App. 3 Cir. 6/29/83), *writ denied*, 444 So.2d 1245 (emphasis added).

A contractor is defined as "any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building...for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes...."  La. Rev. Stat. § 37:2150.1(4)(a).  A contractor is further defined to encompass both subcontractors and general contractors, *Id.* at § 37:2150.1(4)(b), and a general contractor includes a party who "contracts directly with the owner."  *Id.* at § 37:2150.1(6)(a).

Additionally, La. Rev. Stat. §§ 37:2181, et seq, provides specific licensure requirements for parties performing mold remediation services in order to protect those individuals with whom they do business.  Mold remediation is defined as the "removal, cleaning, sanitizing, demolition, or other treatment, including preventive activities, of mold or mold-contaminated matter that was not purposely grown at that location," *id.* at § 37:2182, and includes only those mold-related

activities that affect indoor air quality. *Id.* at § 37:2183. Specifically, the mold remediation licensure requirement states:

> Beginning July 1, 2004, no person shall engage in or conduct, or advertise or hold himself out as engaging in or conducting the business of, or acting in the capacity of a person who conducts mold remediation unless such person holds a mold remediation license as provided for in this Chapter.

*Id.* at § 37:2185(A). Moreover, the statute provides that an applicant for a mold remediation license must meet requirements such as minimum age and education qualifications, board-approved course work and training, fees, submission of a license application and insurance certificates for workers' compensation and liability insurance coverage. *Id.* at § 37:2186(B).

Both § 37:2150 and § 37:2180 clearly state that the purpose of these licensing requirements and regulation is protection of the public interest. Section 2150 provides:

> The purpose of the legislature in enacting this Chapter is the protection of the health, safety, and general welfare of all those persons dealing with persons engaging in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful and fraudulent acts of contractors with whom they contract...

*Id.* at § 37:2150.

Similarly, Section 2181 states:

> The legislature hereby declares that it is in the best interest of the citizens of the state to require the licensure and regulation of those persons who perform remediation.

*Id.* at § 37:2181.

These provisions were specifically enacted so that unqualified individuals operating in professional fields could not injure or mislead the State's citizens. When a contract violates a rule of public order, the contract is "absolutely null." La. Civ. Code. Ann. art. 2030. Furthermore, "[a]ny act in derogation of such laws is an absolute nullity." La. Civ. Code Ann.

art. 7.  Thus, any contracts made in violation of the State licensing requirements are null and void.  *Alonzo v. Chifici*, 526 So.2d 237, 240-43 (La. App. 5 Cir. 4/18/88), *writ denied,* 527 So.2d 307 (relying on Article 7 to nullify renovation agreement between building owner and unlicensed contractor); *Hagberg*, 435 So. 2d at 584-85 (citing *E.L. Burns Co., Inc. v. Cashio*, 302 So.2d 297 (La. 1974) and *West Baton Rouge Parish School Board v. T.R. Ray, Inc*., 367 So.2d 332 (La. 1979) ("Since the licensing provisions for contractors were enacted to protect an interest vital to the public order, whatever contracting agreement entered into by [the contractor] without the benefit of a contractor's license, having been done in contravention of a prohibitory law, is void."); *Executone of Cent. La., Inc. v. Hosp. Svc. Dist. No. 1 of Tangipahoa Parish*, 798 So.2d 987, 993 (La. App. 1 Cir. 5/11/01), *writ denied*, 798 So.2d 116; *Touro Infirmary v. Travelers Prop. Cas. Co. of Am.*, 2007 U.S. Dist. LEXIS 10373, at *11-16 (E.D. La. Feb. 13, 2007) (contract to repair hospital following damage from Hurricane Katrina entirely void as contractor was not licensed in compliance with §37:2150).

Because of the strong public policy reasons underlying the statutes, the licensing rules established by §§ 37:2150, et seq, and §§ 37:2181, et seq, may not be set aside by individuals through private agreement.  *See Hagberg*, 435 So.2d at 584 (reasoning that as § 37:2157(A)(2), (B), (C) and (D) carve out specific exceptions to the definition of contractor, the use of the imperative "shall" in § 37:2160(A) requires that those that do not fall within § 37:2157's exceptions may not otherwise avoid § 37:2160(A)'s requirements).

In this case, it is uncontroverted that Tradewinds possessed neither a contractor's license nor a mold remediation license at the time it negotiated or performed the contracts at issue.  The contracts were made on September 30, 2005 and work was performed in accordance with the

7

contracts throughout October and November of 2005. Though Tradewinds applied for a Louisiana mold remediation license on September 28, 2005, it did not receive the license until February 16, 2006, and though Tradewinds applied for a commercial contractor's license on December 5, 2005, it has yet to receive one as it has not met applicable State law license requirements. (Ex. B to Def. Mot., Letter of Frances B. Gilson, Administrator of the State Licensing Board for Contractors, State of Louisiana).

Tradewinds contends that the work it performed did not require a mold remediation license or a contractor license. Tradewinds also contends that prior jurisprudence is not applicable to the case due to the state of emergency caused by Hurricane Katrina and the lengthy disruption of government, business and courts for several months following the storm. In support, Tradewinds submits the affidavit of Charles G. Marceaux, Executive Director of the Louisiana State Board of Licensing for Contractors, who states that the Licensing Board agreed to suspend active and aggressive enforcement of licensure laws from September 1, 2005 to December 1, 2005. (Ex. 3 to Pl. Reply).

The Court finds that genuine issues of material fact exist regarding the nature and extent of services for which the parties contracted, including whether or not the services to be performed included only mold remediation services and whether or not such services warranted the procurement of a contractor's license. Though the Court finds that a mold remediation license was necessary for the work performed,[4] genuine questions remain as to whether the

---

[4] It is clear from Tradewind's own description of the services it performed that its activities clearly fall within the type of work included in the definition of "mold remediation" in § 37:2182. *See, e.g.,* Aff. of David S. Rubiton, Tradewinds In-house Counsel ¶ 20 ("On or about September 30, 2005, [BMA] signed the first of four contracts and price lists for mold remediation services at its impacted facilities in Louisiana."). In a later reply memorandum,

requirements for mold remediation licenses were suspended in the months following Hurricane Katrina and whether the Licensing Board's informal decision to suspend enforcement of licensure laws had any effect on the statutory requirements.

Accordingly, BMA's Motion for Summary Judgment on Tradewinds' breach of contract claim is DENIED at this time.

        C.        **Liens Enforcement**

BMA contends that the liens Tradewinds filed against its properties are unenforceable not only because the contracts are null and void, but also because Tradewinds failed to file a notice of the contracts with the appropriate Recorders of Mortgages before it began remediation work on the facilities.

The Louisiana Private Works Act, La. Rev. Stat. §§ 9:4801, et seq., states that contractors possess a privilege on an immovable for the price of their work in order to secure the owner's obligations arising out of work on the immovable. The definition of "owner" includes a lessee "having the right to the use or enjoyment of an immovable or having an interest therein." *Id.* at § 9:4806(A). A "contractor" is defined as "one who contracts with an owner to perform all or a part of a work," and the definition of "general contractor" includes a contractor "who contracts to perform all or substantially all of a work."[5] *Id*. at § 9:4807(A) & (B). "Work" is defined as "a

---

Tradewinds characterizes the services as debris removal, removing sheetrock and drying out material when necessary. (Def. Sur-Reply 4-5, 8; *see also* Aff. of David Wilken Desselle, Ex. 5 to Pl. Sur-Reply 39). All of these activities clearly fall within the statutory definition of mold remediation work for the interior of a flood damaged commercial property.

    [5]A contractor who files a written notice of contract with the proper bond attached within a defined period of time is also considered a general contractor under § 9:4808(B). La. Rev. Stat. § 9:4807.

single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts." *Id.* at § 9:4808.

If the above definitions are applicable to the parties and the work to be performed, a written notice of contract between the general contractor and the owner must be filed for registry with the recorder of mortgages of the parish in which the work is to be performed before the work begins. *Id.* at § 9:4811 and § 9:4831. The notice must include such information as legal property and work descriptions, the price or estimate of work to be performed, the date payment will be due, and various information regarding the parties. *Id.* at § 9:4811. In some circumstances, the general contractor is required to furnish and maintain a bond, which must be attached to the notice of contract when it is filed. *Id.* at 9:4812.

Failure to comply with the notice filing requirement can have significant consequences. If the price of work stipulated or reasonably estimated in the contract exceeds $25,000, the general contractor will not be able to secure a lien under § 9:4801 unless the notice of contract is timely filed. *Id.* at § 9:4811; *see also Gauguin, Inc. v. Alsay Addison*, 288 So.2d 893, 897 (La. App. 1 Cir. 12/17/73), *writ denied,* 293 So.2d 167. The nature of privilege enjoyed by general contractors under §§ 9:4801, et seq., requires narrow interpretation and thus strict compliance with its provisions is necessary in order to reap its benefits. *See Paul, Hyde, Inc. v. Richard*, 854 So.2d 1000, 1003 (La. App. 4 Cir. 9/10/03) ("The Private Works Act is in derogation of general contract law, and the general rule is that it therefore must be strictly construed.") The lien provisions may "not be extended or enlarged either by implication or by the application of equitable considerations". *Exec. House Bldg., Inc. v. Demarest*, 248 So.2d 405 (La. App. 4 Cir.

5/10/71) (interpreting predecessor statute to current Private Works Act).

In this case, the parties dispute whether Tradewinds qualifies as a general contractor and consequently whether it had an obligation to file a written notice of contract. Tradewinds maintains that it did not perform a "single continuous project" within the statutory definition of "work." In response, BMA claims that the parties entered into four individual and unrelated contacts for remediation of four different properties, and did not enter into one contract covering multiple projects or properties. Thus some genuine question remains as to whether the services performed under the contract constitute a "single continuous project" and therefore "work" under § 9:4808.

Furthermore, Tradewinds contends that it was impossible to comply with the notice filing requirement as the relevant mortgage records offices were inoperable at the time that Tradewinds performed work on BMA's facilities due to the destruction of these offices by Hurricane Katrina. Tradewinds contends that the only alternative would have been to postpone work until the offices were reopened, which would have substantially delayed cleanup operations. Tradewinds claims that the equity and the principle of estoppel should thus apply to this issue.

As the Court finds that genuine issues of material fact remain in dispute, BMA's motion for summary judgment on Tradewinds's claim regarding lien enforcement is DENIED.

**D.     Open Account**

Lastly, BMA contends that Tradewinds may not maintain a suit for failure to pay on an open account because Tradewinds was hired to perform a finite amount of work under separate contracts for services related to a single event.

La. Rev. Stat. § 9:2781(D) provides that an open account includes:

> any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. An open account shall include debts incurred for professional services, including but not limited to legal and medical services...

When a party fails to pay an open account within thirty days' written demand, such party is liable for attorneys' fees and collection fees, in addition to the amount owed. *Id*. at § 9:2781(A).

In making a determination as to whether an open account exists, Louisiana courts have employed a "value test," examining the principal value of the contract. *See Alonzo*, 526 So.2d at 241. A contract with a primary value based on labor expended constitutes a contract of construction, whereas a contract with a primary value based on materials utilized or incorporated therein constitutes a contract of sale. *Id.* (citing *Price v. Huey Childs Builder, Inc*., 426 So.2d 398 (La. App. 2 Cir. 1/17/83), *writ denied*, 433 So.2d 164). Contracts of construction do not constitute open accounts.

In *Alonzo*, the Court reasoned that the contract at issue constituted a contract of construction based on several factors. *Alonzo,* 526 So.2d at 241. The contractor maintained control over the project's scope as the work progressed, including changing plans, specifications, subcontractors and suppliers. Moreover, the contractor furnished labor and skill, in addition to supplying materials, and his principal value was to supervise the work. *Id.* ("Building or construction contacts involved primarily involve the furnishing of labor and contractual skill.").

Here, it is clear that the value of the contracts lies in the mold remediation and demolition services, which require a degree of skill and training, as evidenced by La. Rev. Stat. § 37:2181's training and course work requirements. The contracts at issue qualify as contracts of construction or contracts "to do" under the "value test," and do not constitute open accounts.

*See Alonzo*, 526 So.2d at 241 (giving other examples of construction contracts similar to the contracts at issue here); *Price*, 426 So.2d at 403.

Alternatively, another test utilized by Louisiana courts to determine whether a contract is one on open account requires examining factors such as whether the parties had other past, current or anticipated future business dealings and whether a line of credit was extended. *Shreveport Electric Co., Inc. v. Oasis Pool Serv., Inc.*, 889 So.2d 274, 279 (La. App. 2 Cir. 9/29/04), *writ denied*, 897 So.2d 613; *Acme Window Cleaners, Inc. v. Natal Const. Co., Inc.*, 660 So.2d 926 (La. App. 4 Cir. 1995).  Courts have held that such factors should be examined due to readily distinguishable characteristics between contracts and open accounts.  A contract is defined under Louisiana law "as an agreement by two or more parties whereby obligations are created, modified, or extinguished," *Shreveport Elec*., 889 So.2d at 279 (citing La. Civ. Code art 1906), whereas an open account "is an account in which a lien of credit is running and is open to future modification because of expectations of prospective business dealings.  Services are recurrently granted over a period of time." *Id.*

In the present case, it is clear that the contracts were made pursuant to a catastrophic event.  Though several contracts were made, all concerned remediation of facilities damaged by Hurricane Katrina and all were made within the same period of time for specific projects with anticipated end dates.  Thus, it does not appear that the parties intended to have future or ongoing business dealings.  However, Tradewinds contends that it is entitled to an open account because a line of credit was extended.  BMA strongly disputes this allegation.   The Plainitff's complaint states that pursuant to the written agreements, all amounts invoiced were due and payable upon receipt.  (Pl. Second Am. Compl. ¶ 14).  A review of the written Work

13

Authorization Contracts confirms this statement.  Accordingly, the Court finds that no open account was created.

In any event, analysis of whether an open account existed is unnecessary because the contracts were illegal under Louisiana law, as explained in Section III.B *supra*.  Thus, Tradewinds may not maintain a claim on failure to pay an open account as the contracts are null and void.  BMA's Motion for Summary Judgment on this claim is GRANTED.

## IV.  Conclusion

Accordingly, IT IS ORDERED that Defendant BMA's Motion for Partial Summary Judgment is GRANTED IN PART.  Tradewinds' claim for open account is DISMISSED.  The claims for breach of contract, lien foreclosure and unjust enrichment remain to be litigated.

New Orleans, Louisiana, this  19th  day of March, 2007.

                                                                        _____
                                                                        UNITED STATES DISTRICT JUDGE